OPINION
Defendant-appellant Blaze Oil Gas, Inc. appeals from the April 26, 2000, Judgment Entry of the Holmes County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
Appellant Blaze Oil Gas, Inc., a small family oil and gas producer, is the lessee under an oil and gas lease covering a tract of land located in Holmes County, Ohio. Appellees, the Reining Family, are the owners of the land that is subject to the lease. Until 1994, all wells located on the subject property had been drilled to Clinton sandstone, a relatively shallow geologic formation. In 1994, after appellant proposed to drill a well on the property to test the "Rose Run", a deeper geologic formation which had the potential for greater oil and gas production, the parties in this matter entered into an agreement. Pursuant to the terms of the agreement, which was dated June 15, 1994, appellees granted appellant authority to drill a Rose Run test well. The well was to be known as Lela #1 Well. The June 15, 1994, agreement provided, in part, as follows: 8. Preparation of the access road to the well shall be performed by Odie Simmons, as a subcontractor of Blaze. The location of the access road shall be as set forth herein. All subcontractors of Blaze shall operate under the direction of Blaze but in no event will the location of the access road be changed from the location approved in paragraph ten (10). 9. The agreed access road shall serve as the sole means of ingress and egress to and from the Well, by Blaze and its contractors. This Agreement shall not restrict usage by Reining, or their heirs or successors, of the access road for any purpose. 10. The access road shall start from Township Road 310, following the present access road along the farm fields to the beginning of the prior pipeline, following at the power line right of way to near the top of the hill, turning south (left) and continuing another 500 feet, then turning west (right) and running down the hill past the old dump site on the north side and ending at the well location. The exact location shall be agreed upon by Blaze and Reinings, both of whom agree to cooperate in good faith. The location of the Well shall be as shown on the map, attached as Exhibit "C" to this Agreement. 11. If the Well is a dry hole, Blaze agrees to 1) replant the disturbed well site with oak, cherry, poplar, and hickory trees in the six to ten foot range, to the reasonable specifications of Joel Berry of Berry Farms, in Shreve, Ohio; 2) reseed the disturbed area with pasture mix; 3) reclaim the access road cut into the site of the Well, and 4) in addition to the timber proceeds paid to Reinings per paragraph two (2), above, Blaze shall pay Reinings three times that amount, as agreed damages. All the requirements of this paragraph shall be complete within sixty (60) days after removal of the drilling rig. 12. If the Well goes into production from the Rose Run, Blaze agrees to apply stone to the access road specified in paragraph ten (10) of this Agreement sufficient to allow traffic to be carried, from the township road to the Well site, excluding only that portion of the access road which travels along the power line right of way and to maintain said roadway. Said stoning shall be begun within fifteen (15) days after the well goes into production the drilling rig leaves the wellhead and completed within 60 days after the well goes into production. 13. If the Well goes into production, Blaze agrees to plant grasses within a 200 foot radius of the well . . .
In accordance with the parties' agreement, appellant proceeded to drill and complete the Lela #1 Well. However, appellant was never able to "make a commercial Rose Run well out of the Lela well," which produced only a small volume of oil and gas. Trial Transcript at 55. For such reason, appellant "plugged" the well back to the shallower Clinton formation. To date, the Lela Well continues producing from the Clinton formation. On May 11, 1999, appellees filed a complaint against appellant in the Holmes County Court of Common Pleas. Appellees, in their complaint, alleged, in part, that appellant had violated paragraph eleven of the June 15, 1994, agreement by failing to replant trees, reseed the disturbed area, and reclaim the access road. Thereafter, on October 12, 1999, appellees, with leave of court, filed an amended complaint against appellant. Appellees, in their amended complaint, alleged that appellant had violated paragraphs 11, 12 and 13 of the June 15, 1994, agreement. With respect to paragraph 12, appellees specifically asserted as follows: 13 That pursuant to paragraph twelve of the Agreement, Defendant was required to "apply stone to the access road . . . sufficient to allow traffic to be carried, from the township road to the Well site . . . and to maintain such roadway." The paragraph further indicates that the stoning was to be completed within sixty (60) days after the well goes into production. 14. That the Well went into production on 30 October 1995, (See Exhibit D attached requiring stoning to be complete by 30 December 1995). 15. That Defendants have failed to complete the initial stoning requirement for the entire access road, stoning only a portion of same, . . . 16. That Defendants in addition to failing to complete the required stoning, have failed to maintain the balance of access road.
Appellees, in the prayer in their amended complaint, sought an order from the trial court requiring appellant to fully comply with the agreement or, in the alternative, damages in excess of $25,000.00. Appellees also sought attorney fees and costs. An answer to appellees' amended complaint was filed by appellant on October 25, 1999. Subsequently, a bench trial commenced in this matter on March 21, 2000. Appellees, at the bench trial, sought to introduce into evidence an authenticated document captioned "Soil Conservation Service, State of Ohio, Engineering Standard". However, appellant objected on the record to the admission of the same, arguing that since Exhibit H on its face did not apply to oil well access roads, it was not relevant. At trial, the trial court took the matter of the admission of Exhibit H under advisement. Thereafter, as memorialized in a Judgment Entry filed on April 26, 2000, the trial court admitted Exhibit H into evidence, holding that it contained "engineering standards for access roads of the type envisioned in paragraph 12" of the parties' June 15, 1994, agreement. In addition, the trial court, after finding that appellant had violated paragraph 12 of the agreement by failing to adequately stone and maintain the access road to Lela #1 Well, adopted the standards set forth in Exhibit H and ordered appellant to comply with certain specific portions of Exhibit H with respect to the access road. It is from the trial court's April 26, 2000, Judgment Entry that appellant now prosecutes its appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE A STATE OF OHIO ENGINEERING STANDARD FOR TRAVELWAYS CONSTRUCTED AS PART OF CONSERVATION PLANS (PLAINTIFFS' EXHIBIT "H") ABSENT ANY EVIDENCE THAT THE ROADWAY AT ISSUE WAS CONSTRUCTED AS PART OF A CONSERVATION PLAN.
 ASSIGNMENT OF ERROR II THETRIAL COURT ERRED IN ORDERING APPELLANT TO COMPLY WITH CERTAIN SPECIFIC ENGINEERING STANDARDS CONTAINED IN PLAINTIFF'S EXHIBIT "H".
 I
Appellant, in its first assignment of error, challenges the trial court's admission of Exhibit H. Appellant specifically contends that Exhibit H, which specifies on its face that it is limited to "travelways constructed as part of a conservation plan", is irrelevant since there was no evidence that the access road to Lela #1 Well was constructed as part of such a plan. Pursuant to Evid.R. 402, "[e]vidence which is not relevant is not admissible." Evid.R. 401 defines relevant evidence as `evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. In order to find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. As is stated above, paragraph 12 of the parties' June 15, 1994, agreement states, in relevant part, as follows: "If the Well goes into production from the Rose Run, Blaze [appellant] agrees to apply stone to the access road specified in paragraph ten (10) of the Agreement sufficient to allow traffic to be carried from the township road to the Well site, excluding only that portion of the access road which travels along the power line right of way and to maintain said roadway." At the trial in this matter, appellees, upon resting their case, sought to introduce Exhibit H. Exhibit H, which is captioned "Soil Conservation Service, State of Ohio, Engineering Standard", states, in pertinent part, as follows:
ACCESS ROAD (Ft.) -560 Definition
A travelway constructed as a part of a conservation plan.
Scope
This standard applies to vehicular and equipment roads constructed to provide access to farms, ranches, fields, conservation systems, structures, woodlands, and recreation areas.
Purpose
To provide a fixed route for travel for moving livestock, produce, equipment, and supplies; and to provide access for proper operation, maintenance, and management of conservation enterprises while controlling runoff to prevent erosion and maintain or improve water quality. Conditions Where Practice Applies Where access is needed from a public or private road or highway to a conservation enterprise or measure, or where travelways are needed in a planned use area.
Emphasis added.
However, appellant objected to the admission of such exhibit, arguing as follows:
 MR. KELLER: . . . We object to Exhibit H for a couple of reasons, Your Honor. Exhibit H purports to be a technical guide from the Soil Conservation Service. We object to that on the basis of relevancy. This document on its face does not apply to oil well access roads. There are a number of provisions in this agreement which make the standards extremely use specific. There is no mention in here of oil well access roads and what is the standard for the proper construction of an oil well access road. So we object on the basis of relevancy. We also object to that document on the basis of hearsay. If you wanted to use this document, he should have had someone here from the State to describe its proper use, interpretation and applicability. Thank you . . .
Trial Transcript at 46-47. While the trial court took the objection to Exhibit H under advisement to review the same for relevancy, the trial court subsequently admitted the same into evidence. At issue is whether the trial court abused its discretion in admitting Exhibit H and holding that Exhibit H was relevant with respect to the issue of the design and maintenance of the access road in this matter. We concur with appellant that the trial court abused its discretion in admitting Exhibit H since such decision was unreasonable and arbitrary. As evidenced by the above language, by its very terms, Exhibit H is applicable to access roads that are constructed as part of a conservation plan. However, there was no evidence or testimony presented at the trial in this matter, expert or otherwise, that the access road to Lela #1 Well was constructed as part of such a plan and/or that Exhibit H applies to the type of access road involved in this matter. Moreover, appellees did not lay any foundation for the admittance of such exhibit. For such reason, we find that appellees' Exhibit H was not relevant as to the issue of the maintenance and design of the access road in this matter and that the trial court abused its discretion in admitting the same. Accordingly, based on the foregoing, appellant's first assignment of error is sustained.
 II
Appellant, in its second assignment of error, contends that the trial court erred in ordering appellant to comply with certain specific engineering standards contained in appellees' Exhibit H. Based on this Court's disposition with respect to appellant's first assignment of error, appellant's second assignment of error is moot. Accordingly, the judgment of the Holmes County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
 _____________ Edwards, P.J.
Hoffman, J. and Boggins, J. concurs.